# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH and DYNAENERGETICS US, INC., | Civil Action |
| | No. 6:21-cv-00349-ADA |
| Plaintiffs, | |
| | Judge Alan D. Albright |
| v. | |
| HORIZONTAL WIRELINE SERVICES, LLC and ALLIED WIRELINE SERVICES, LLC, | *Electronically Filed* |
| Defendants. | |

## DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  TERMS FOR CONSTRUCTION ..................................................................................... 1

    A.   "tandem seal adapter" (claims 1, 8, 9) ...................................................................... 1

    B.   "first end" / "second end" (claims 1, 9) .................................................................... 2

    C.   "connected to" (claims 1, 9) ...................................................................................... 2

    D.   "pin connector assembly" (claim 1) .......................................................................... 2

    E.   "first pin connector end" / "second pin connector end" (claims 1, 2, and 9) ............ 3

    F.   "in electrical communication with" (claims 1, 10) ................................................... 3

    G.   "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (claim 2) ................................................................ 4

    H.   "bulkhead connector element" (claims 9, 10) .......................................................... 6

III. CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*DynaEnergetics Europe GmbH v. G&H Diversified Mfg., LP*,
    No. 6:20-cv-01110-ADA (W.D. Tex.)......................................................................... 1

*DynaEnergetics Europe GmbH v. GR Energy Services Operating GP LLC*,
    No. 6:21-cv-00085-ADA (W.D. Tex.)......................................................................... 1

*DynaEnergetics Europe GmbH v. NexTier Oilfield Sols., Inc.*,
    No. 6:21-cv-01201-ADA (W.D. Tex.)......................................................................... 1

*DynaEnergetics Europe GmbH v. PerfX Wireline Services, LLC*,
    No. 6:21-cv-00371-ADA (W.D. Tex.)......................................................................... 1

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533, 1538 (Fed. Cir. 1991).................................................................... 7, 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1316 (Fed. Cir. 2005)......................................................................... 5

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339, 1348-50 (Fed. Cir. 2015) (en banc) ................................................ 6, 7

## STATUTES

35 U.S.C. §112(f)................................................................................................................ 6, 7

## I. INTRODUCTION

Defendants Horizontal Wireline Services, LLC ("Horizontal") and Allied Wireline Services, LLC ("Allied") (collectively, "Defendants") submit this Reply Claim Construction Brief in response to Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.'s (collectively, "Dyna" or "Plaintiffs") Responsive Claim Construction Brief (Dkt. 34).

Dyna complains that it had to submit multiple claim construction briefs for the same patent and blames Defendants, along with others accused of infringing U.S. Patent No. 10,844,697 (the "'697 Patent") (Dkt. 31-1) in non-consolidated cases in this and other courts. Yet it was Dyna that chose to simultaneously sue multiple different companies in multiple different courts. Each defendant's product is different and has unique features and characteristics, so it should come as no surprise that the claim terms and arguments may also differ. Nevertheless, in the interest of minimizing the burden on the Court and Dyna, and because the proposed constructions of the defendants in the Western District of Texas cases[1] are, as a general matter, not substantively different, Defendants have made modest adjustments to several terms to align them with the constructions of the other Western District of Texas defendants.

## II. TERMS FOR CONSTRUCTION

### A. "tandem seal adapter" (claims 1, 8, 9)

In order to streamline the *Markman* process, Defendants make the following non-substantive modification of their proposed construction to align with the construction of at least

---

[1] *DynaEnergetics Europe GmbH v. G&H Diversified Mfg., LP*, No. 6:20-cv-01110-ADA (W.D. Tex.); *DynaEnergetics Europe GmbH v. GR Energy Services Operating GP LLC*, No. 6:21-cv-00085-ADA (W.D. Tex.); *DynaEnergetics Europe GmbH v. NexTier Oilfield Sols., Inc.*, No. 6:21-cv-01201-ADA (W.D. Tex.); *DynaEnergetics Europe GmbH v. PerfX Wireline Services, LLC*, No. 6:21-cv-00371-ADA (W.D. Tex.).

1

co-defendants G&H Diversified Manufacturing, LP's ("G&H") and NexTier Oilfield Solutions, Inc. ("NexTier"), and incorporate G&H's Reply Brief argument on this term.

| Defendants' Original Construction | Defendants' Revised Construction |
|---|---|
| "an adapter configured to form a seal between two gun carriers or tools that are directly attached to each other" | "adapter configured to form a seal between two gun carriers/tools that are directly attached to each other" |

### B. "first end" / "second end" (claims 1, 9)

Like with the above term, Defendants make the following non-substantive modification of their proposed construction to align with the construction of at least co-defendants G&H and NexTier, as well as additional co-defendant GR Energy Services Operating GP LLC ("GR Energy"), and incorporate G&H's Reply Brief argument on this term.

| Defendants' Original Construction | Defendants' Revised Construction |
|---|---|
| "first/second furthest or most extreme part, point, or edge lengthwise" | "first/second farthest or most extreme part or point" |

### C. "connected to" (claims 1, 9)

Again, Defendants make the following non-substantive modification of their proposed construction to align with the construction of at least co-defendants G&H, NexTier, and GR Energy, and incorporate G&H's Reply Brief argument on this term.

| Defendants' Original Construction | Defendants' Revised Construction |
|---|---|
| No construction necessary; plain and ordinary meaning | "joined or coupled together" |

### D. "pin connector assembly" (claim 1)

Defendants' construction for this term was already identical to that of co-defendants G&H and XConnect. To streamline the *Markman* process, Defendants incorporate G&H's Reply Brief argument on this term.

2

### E.   "first pin connector end" / "second pin connector end" (claims 1, 2, and 9)

Like with the above terms, Defendants make the following non-substantive modification of their proposed construction to align with the construction of co-defendants G&H and NexTier, and incorporate G&H's Reply Brief argument on this term.

| Defendants' Original Construction | Defendants' Revised Construction |
|---|---|
| "first/second furthest or most extreme part, point, or edge lengthwise end of the pin connector assembly" | "first/second end of the pin connector assembly" |

### F.   "in electrical communication with" (claims 1, 10)

Dyna asserts that a person of ordinary skill in the art ("POSITA") reading this claim language would understand that, for components "in electrical communication with" each other, there is an ability for an electrical signal to be transferred between components. Dkt. 34 at 15. Dyna argues that Defendants, in specifying that the detonator "receives" the electrical signal, have improperly relied upon the prosecution history to include a "directional" term. But the prosecution history is particularly relevant as the term "in electrical communication with" was added during prosecution and appears nowhere in the specification. In particular, Dyna introduced this phrase by replacing "the detonator *configured to receive the electrical signal* from the pressure bulkhead" with "the detonator *is in electrical communication with* the pin connector assembly." *See* Dkt. 31 at 14 (citing Dkt. 31-14). Dyna further stated that "[t]he clarifying amendments *do not change the scope of the claims*." Dkt. 31-14 at 8. Thus, it was Dyna's own statements that equated "in electrical communication with" with "receive the electrical signal."

Dyna argues that a later examiner's amendment to claim 10 changing "a first contact pin that is *in electrical contact with* a signal in connector element of the detonator" to "bulkhead connector element is *in electrical communication with* a second detonator positioned within the second outer gun carrier" supports its position that "electrical communication" covers more than

3

merely receiving information by electrical signal. Dkt. 34 at 16 (citing June 26, 2020 Notice of Allowability at 4-5). However, there is no indication as to why this amendment was made or whether the revised claim is of the same scope as the pre-amended claim, as there was with the earlier amendment that introduced the phrase "in electrical communication with." Thus, Dyna's argument is unsupported. The most reasonable view is that this amendment changed the claim scope, confirming that "in electrical contact with" is different than "in electrical communication with."

In its brief, Dyna does not address or dispute that the "signal" includes information, and hence the "electrical communication" is distinct from an electrical contact or electrical connection that transfers only current. As explained in Defendants' opening brief, two components "in electrical communication with" one another would be understood to pass a signal carrying information, and not just power, between the two elements. Dkt. 31 at 12-13. Nor does Dyna address its effort to distinguish claim 1 from U.S. Patent No. 9,677,363 to Schacherer in which the signal (with the information) is communicated to a switch, not the detonator, and the detonator receives only electrical power, not the signal itself. *Id*. at 14-15.

### G.   "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (claim 2)

Dyna contends that the specification of the '697 Patent provides a "general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of" this term in the form of what Dyna characterizes as a "short, stiff pin connector assembly" and a "portless tandem seal adapter." Dkt. 34 at 18. But a "short, stiff pin connector assembly" is not actually described in the '697 Patent. Instead, the '697 Patent describes a pin connector assembly that is composed of multiple pieces and, in the preferred embodiments, is spring loaded. Dkt. 31-1 at 8:34-42. Neither the term "portless" nor any discussion of a "port" with respect to the "tandem

seal adapter" appears in the specification of the '697 Patent.

Dyna then argues a POSITA would understand this limitation because of the difference between this "short, stiff pin connector assembly," which is not actually described, and an alleged prior art arrangement that instead uses wires "that may be prone to damage, disconnection, or wiring mistakes." Dkt. 34 at 18. However, Dyna's comparison, at most, explains why a "short, stiff pin connector assembly" would be less prone to interruption than one using wires. This comparison does not explain the bounds of a claim term which states that it is "not possible," not merely less likely, for the signal to be interrupted. Moreover, Dyna's argument requires one to accept that the hypothetical "wired" connection is, in fact, more prone to interruption, even though the '697 Patent makes no mention of this. The '697 Patent also fails to explain that the pin connector assembly described therein is not "prone to damage, disconnection, or wiring mistakes," which appears to be Dyna's basis to distinguish the hypothetical wired connection. Dkt. 34 at 18.

Simply put, Dyna has not, and cannot, point to anything in the '697 Patent that explains, with reasonable certainty, what it means to be "not possible to interrupt the electrical signal." Accordingly, a POSITA would have no way of knowing which of any number of possible configurations of a pin connector assembly would meet this limitation. The subjective and unbounded nature of this term is confirmed through Dyna's argument which essentially rests on its expert's personal belief that it would be more difficult to disrupt a signal in the configuration of the '697 Patent than in some (though perhaps not all) wired connections.

Dyna also asserts that the examiner's rejection of claim 2 over prior art, and subsequent withdrawal of that rejection, confirms that the term must have a definite meaning. Dkt. 34 at 18-19. But the USPTO applies a "broadest reasonable [interpretation]" standard during prosecution, which is different than the standard applied by courts. *See Phillips v. AWH Corp.*, 415 F.3d 1303,

5

1316 (Fed. Cir. 2005). Moreover, accepting Dyna's argument would mean that a court could never find a claim term indefinite since any claim considered by a court would have been approved by the USPTO during prosecution.

### H. "bulkhead connector element" (claims 9, 10)

Dyna's argument that the "bulkhead connector element" is not means-plus-function rests almost entirely on the presumption that 35 U.S.C. §112(f) is not invoked. *See* Dkt. 34 at 19. But the Federal Circuit has held that this presumption is rebuttable and not particularly strong. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-50 (Fed. Cir. 2015) (en banc) (expressly overruling cases holding that this is a "strong" presumption). Here, the generic terms "element" and "connector"—combined with the fact that the claims solely refer to the bulkhead connector element's function as opposed to its structure—means the presumption is overcome.

Dyna's argument that a POSITA would know "the materials, assembly, and electrical concepts required to carry out this aspect of the claimed invention" does not change this result. *See* Dkt. 34 at 19. Under the law, the correct standard for when § 112(f) does not apply is when "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *See Williamson*, at 1349. Whether a POSITA understands the general "concept" is irrelevant and not the correct legal standard.

With respect to the corresponding structure, Dyna acknowledges, as it must, that the specification describes the "bulkhead connector element" as element "118," shown only as an exposed surface on the head of a detonator in FIGS. 27-31 and 35A. Dkt. 34 at 19-20. If the Court finds the specification describes any corresponding structure for the "bulkhead connector

element," this is the only such structure disclosed.[2]

Dyna's effort to identify additional structure fails. According to Dyna, the "bulkhead connector element" also generally refers to "the structure illustrated in, e.g., FIGS. 32 and 33, at the end of the pin connector assembly that connects to the second pin connector end." Dkt. 34 at 19-20. But these figures again reference element "118," which is the exposed surface on the end of the detonator head. *See* Dkt. 31-1, FIGS. 27, 28, and 30; 8:8:31-33 (noting that FIGS. 32 and 33 "illustrate a connection of the above-described detonator assembly"). There is no other "bulkhead connector element" structure identified in FIGS. 32 and 33, much less one that the specification "clearly links" to the claimed function. *Williamson*, 792 F.3d at 1352. Dyna further asserts that a POSITA "would also recognize that the '697 Patent describes the bulkhead connector element as an electrical connector of the ***top connector*** that is in electrical contact with the pin connector assembly." Dkt. 34 at 20 (emphasis added). But the '697 Patent describes the top connector as providing "energetic coupling" between the detonator and detonator cord. Dkt. 31-1 at 6:23-24; FIG. 32. The claimed function of the "bulkhead connector element" identified by Defendants, and not disputed by Dyna, is to establish an electrical connection with the second pin connector end of the pressure bulkhead. *See* Dkt. 31 at 18.

Finally, Dyna argues that claim 12 and the doctrine of claim differentiation warrant a broader structure than proposed by Defendants. Dkt. 34 at 20. However, claim differentiation cannot override the effect of section 112(f). *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (a "means-plus-function limitation is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an

---

[2] On the other hand, if one accepts Dyna's position on what constitutes "corresponding structure," the claim term is indefinite since the specification fails to "clearly link" these structures to the claimed function, as explained below. *Williamson*, 792 F.3d at 1352.

equivalent of that structure.") In any event, claim differentiation is maintained under Defendants' construction. The literal scope of claim 10 is the structure described in the specification ***and equivalents thereof***, while the literal scope of claim 12 is only the identified structure. *Id.*

### III. CONCLUSION

For the above reasons as well as those provided in Defendants' opening brief, the Court should adopt Defendants' claim construction positions.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: November 22, 2021

s/ *Bryan P. Clark*
Kent E. Baldauf, Jr. (PA Bar No. 70793)
Admitted WDTX
Bryan P. Clark (PA Bar No. 205708)
Admitted WDTX
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com

AND

Jason R. Grill (TX ID No. 24002185)
**STEPTOE & JOHNSON PLLC**
17088 Hughes Landing Blvd., Suite 750
The Woodlands, TX 77380
281.203.5700
281.203.5701 (fax)
jason.grill@steptoe-johnson.com

*Attorneys for Defendants*

No. 6:21-cv-00349-ADA

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2021, I electronically filed the foregoing **DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF** with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

**THE WEBB LAW FIRM**

s/ *Bryan P. Clark*
Bryan P. Clark