**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HORIZONTAL WIRELINE SERVICES, LLC, and ALLIED WIRELINE SERVICES, LLC, <br><br> Defendant. | Civil Action No: 6:21-cv-00349-ADA |

**DYNAENERGETICS EUROPE GMBH AND DYNAENERGETICS US, INC.'S
<u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 3

    A.   "tandem seal adapter" (asserted claims 1, 8, and 9) ............................... 3

    B.   "first end" / "second end" (asserted claim 1 and 9) ............................... 3

    C.   "connected to" (asserted claim 1 and 9) ............................................ 3

    D.   "pin connector assembly" (asserted claim 1) ......................................... 4

    E.   "first pin connector end" / "second pin connector end" (asserted claims 1, 2, and 9) ............................................................................................... 4

    F.   "in electrical communication with" (asserted claims 1 and 10) ............................ 4

    G.   "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2) ...................... 6

    H.   "bulkhead connector element" (asserted claim 9 and 10) ....................................... 7

III.  CONCLUSION ................................................................................................. 8

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") submit this Sur-Reply Claim Construction Brief in support of their proposed construction for a disputed term of U.S. Patent No. 10,844,697 (the "'697 Patent") as well as addressing terms that Defendant Allied Wireline Services, LLC and Horizontal Wireline Services, LLC's (collectively, "Defendants" or "Horizontal") has proposed for construction.

## I.    INTRODUCTION

In their effort to improperly limit claim scope to suit its noninfringement and invalidity positions, Defendants continue to repeatedly point to a statement made by DynaEnergetics' expert for a single disputed term, "tandem seal adapter," from a related patent in a different litigation[1] to somehow justify that *all* of its proposed constructions are correct. But in that same litigation—even accounting for DynaEnergetics' expert's statement that "tandem seal adapter" is not a common industry term—Judge Lake agreed with DynaEnergetics and recognized that the term "tandem seal adapter" does not need construction. Ex. L, *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc*., No. CV H-20-2123, 2021 WL 5494932, at *8 (S.D. Tex. Nov. 23, 2021) (the "'938 Patent Markman Decision") ("After carefully considering the parties' arguments and the applicable law, the court concludes that the term 'tandem seal adapter' is subject only to its plain and ordinary meaning, which needs no further construction."). That determination is even more appropriate here because, as noted in the DynaEnergetics' Responsive Claim Construction Brief ("Responsive Brief") (Dkt. 34 at 6), the characteristics of the "tandem seal adapter" as used in the claims of the '697 Patent are even *more* expressly defined by the claim terms than in the '938 Patent claims, which provides definitive support for affording the term its plain and ordinary meaning.

---

[1] U.S. Patent No. 10,472,938 (the "'938 Patent") asserted in *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, Civil Action No. 4:20-cv-02123 (S.D. Tex.) (the "'938 Patent Litigation").

Furthermore, the various '697 Patent defendants revised their proposed constructions mid-way through the claim construction ***briefing*** (not prior to submission of the JCCS) ostensibly in order to "harmonize" their proposed constructions. Putting aside the impropriety of such a belated revision, the fact that defendants could not (and for some terms, still do not) agree on a single construction for the disputed claim terms demonstrates the weakness of their positions. Horizontal incredibly admits that because "[e]ach defendant's product is different and has unique features and characteristics, . . . ***it should come as no surprise that the [defendants'] claim terms and arguments may also differ."*** Dkt. 37 at 1. However, "claims are not construed 'to cover' or 'not to cover' the accused device. That procedure would make infringement a matter of judicial whim. It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). And as the Southern District of Texas recognized for the '938 Patent,[2] the '697 Patent does not use highly technical language or terms of art that would be difficult for a lay jury to understand. The claims utilize little, if any, technical jargon and are written in plain English. Yet Horizontal and the other defendants propose to construe a large number of terms, and they present complicated interpretations in an effort to aid their own non-infringement and invalidity theories, not to help the jury or this Court. For the single term that DynaEnergetics proposes for construction, "connected to," DynaEnergetics is forced to propose a construction that is consistent with how a POSITA would understand the intrinsic record because of these defendants' attempt to improperly stretch the scope of the prior art to fit their invalidity position.

---

[2] The '697 Patent is a continuation from the '938 Patent and shares the same specification. In the '938 Patent Markman Decision, the court found that all of the disputed terms were subject to their plain and ordinary meaning and no construction was required.

The Court should reject Horizontal's and the other defendants' unnecessary and unhelpful claim construction proposals and should give the disputed claim terms their plain and ordinary meanings consistent with DynaEnergetics' positions.

## II.   ARGUMENT

### A.   "tandem seal adapter" (asserted claims 1, 8, and 9)

| DynaEnergetics' Construction | Horizontal's Construction | Defendants' Revised "Harmonized" Construction |
|---|---|---|
| No construction needed; plain and ordinary meaning. | "an adapter configured to form a seal between two gun carriers or tools that are directly attached to each other" | adapter configured to form a seal between two gun carriers/tools that are directly attached to each other |

Because Horizontal "incorporate[d] G&H's Reply Brief argument on this term" "[i]n order to streamline the *Markman* process," Dkt. 37 at 1-2, DynaEnergetics incorporates its argument for this term in its Sur-Reply Claim Construction Brief filed in *DynaEnergetics Europe GmbH v. G&H Diversified Manufacturing, LP*, Case No. 6:20-cv-01110-ADA (W.D. Tex.) ("G&H Sur-Reply").

### B.   "first end" / "second end" (asserted claim 1 and 9)

| DynaEnergetics' Construction | Horizontal's Construction | Defendants' Revised "Harmonized" Construction |
|---|---|---|
| No construction needed; plain and ordinary meaning. | "first furthest or most extreme part, point, or edge lengthwise" / "second furthest or most extreme part, point, or edge lengthwise" | "first/second farthest or most extreme part or point" |

Because Horizontal "incorporate[d] G&H's Reply Brief argument on this term," Dkt. 37 at 2, DynaEnergetics incorporates its argument for this term in its G&H Sur-Reply.

### C.   "connected to" (asserted claim 1 and 9)

| DynaEnergetics' Construction | Horizontal's Construction | Defendants' Revised "Harmonized" Construction |
|---|---|---|

| Plain and ordinary meaning, which is "joined or coupled to, in a manner that resists separation and not merely by physical contact" | Plain and ordinary meaning; no construction necessary | "joined or coupled together" |
|---|---|---|

Because Horizontal "incorporate[d] G&H's Reply Brief argument on this term," Dkt. 37

at 2, DynaEnergetics incorporates its argument for this term in its G&H Sur-Reply.

### D.  "pin connector assembly" (asserted claim 1)

| DynaEnergetics' Construction | Horizontal's Construction / Defendants' Revised "Harmonized" Construction |
|---|---|
| No construction needed; plain and ordinary meaning. | "a plurality of parts that are fitted together to form a component with pins for electrically connecting two guns or tools." |

Because Horizontal "incorporate[d] G&H's Reply Brief argument on this term," Dkt. 37

at 2, DynaEnergetics incorporates its argument for this term in its G&H Sur-Reply.

### E.  "first pin connector end" / "second pin connector end" (asserted claims 1, 2, and 9)

| DynaEnergetics' Construction | Horizontal's Construction | Defendants' Revised "Harmonized" Construction |
|---|---|---|
| No construction needed; plain and ordinary meaning. | "first furthest or most extreme part, point, or edge lengthwise of the pin connector assembly" / "second furthest or most extreme part, point, or edge lengthwise of the pin connector assembly" | "first/second end of the pin connector assembly" |

Because Horizontal "incorporate[d] G&H's Reply Brief argument on this term," Dkt. 37

at 3, DynaEnergetics incorporates its argument for this term in its G&H Sur-Reply.

### F.  "in electrical communication with" (asserted claims 1 and 10)

| DynaEnergetics' Construction | Horizontal's Construction |
|---|---|
| No construction needed; plain and ordinary meaning. | "receives the electrical signal directly from" |

The fact that Horizontal and the other '697 Patent Defendants cannot agree on a proposed construction for "in electrical communication with"—or even whether this term needs construction—confirms that no construction is actually needed. Furthermore, Horizontal failed to address the argument that Horizontal's proposed construction imposes an unsupported and inconsistent directional limitation to the claims, as explained in DynaEnergetics' Responsive Brief. *See* Dkt. 34 at 16-17. Even GR Energy Services—the only other '697 Patent defendant who is proposing a construction for this term—agreed with DynaEnergetics' argument and changed its proposed construction for this term in order to remove the directional limitation.

Instead, Horizontal maintains its clearly inconsistent interpretation of the prosecution history in order to find support for its construction. Horizontal makes a conflicting and nonsensical argument that the prosecution history amendment changing the claim language to include the term "in communication with" was both a clarifying amendment that did not change the scope of the claims but also an "effort to distinguish claim 1 from U.S. Patent No. 9,677,363." Dkt. 37 at 3-4. At the same time, Horizontal disregards the fact that the prosecution history decidedly shows that the claim language "in electrical communication with" is broader than transmitting an electrical signal because it was used to cover both being "in electrical contact with," in addition to being "configured to receive an electrical signal." *See* Dkt. 34 at 15-17. Horizontal's only rebuttal to this argument is stating that "there is no indication as to why this amendment was made." Dkt. 37 at 4. Horizontal failed to meet its burden to demonstrate that there was a "clear and unmistakable" disavowal or disclaimer of claim scope that would limit the plain and ordinary meaning of "in electrical communication with" to its proposed construction. *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply to an ambiguous

5

disavowal."). Accordingly, the Court should reject Horizontal's proposed construction and instead hold that "in electrical communication with" is subject to its plain and ordinary meaning.

### G. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2)

| DynaEnergetics' Construction | Horizontal's Construction |
|---|---|
| No construction needed; plain and ordinary meaning. | Indefinite. |

As Horizontal admits in its reply brief, the teachings and specification of the '697 Patent "explains why a 'short, stiff pin connector assembly' [as claimed by the '697 Patent] would be less prone to interruption than one using wires." Dkt. 37 at 5. Accordingly, with the context of the relevant industry knowledge, a POSITA would recognize that the improvements taught by the '697 Patent provide reasonable certainty about the claimed inventions' scope. *See* Dkt. 34-3 ¶ 108.

In *Nevro Corp. v. Bos. Sci. Corp.,* the Federal Circuit held that the term "paresthesia-free" was not indefinite because "a skilled artisan would be able to quickly determine whether a signal creates paresthesia for any given patient." 955 F.3d 35, 40 (Fed. Cir. 2020) (citation omitted). And similarly here, a POSITA would be able to quickly determine whether it is possible to interrupt the electrical signal due to the presence of a port and/or wired connections that may be prone to damage, disconnection, or wiring mistakes. *See* Dkt. 34-3 ¶¶ 100-05; *see also* '697 Patent at 11:18-47. A POSITA would recognize that the improvements taught by the '697 Patent provide reasonable certainty about the claimed inventions' scope—which is that it would not be possible to interrupt the electrical signal from the first pin connector end to the second pin connector end in the same manner one could with wired connections, due to the portless tandem seal adapter that does not allow access to the pressure bulkhead and pin connector assembly. *See* Dkt. 34-3 ¶¶ 107-08. As explained in DynaEnergetics' Responsive Brief, the materials, assembly, and electrical concepts disclosed in the '697 Patent, in addition to the common knowledge in the industry,

provide "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of the claims." *Nevro Corp.*, 955 F.3d at 39 (citation omitted); *see also* Dkt. 34-3 ¶¶ 99-105, 107-08. On the other hand, Horizontal's argument is based on unrelated notions of electrical connection failures generally—e.g., due to incorrect assembly or failure from corrosion—while ignoring the clear support for the invention in the claim and specification.

Furthermore, DynaEnergetics is not arguing that every claim allowed by an examiner is not indefinite. However, the fact that the prosecution history unmistakably shows that the examiner was clearly able to recognize the definite scope of the functional limitation, "it is not possible to interrupt the electrical signal," provides clear support and evidence that a POSITA would understand the teaching in the '697 Patent as providing the proper basis and scope for the limitation "it is not possible to interrupt the electrical signal." Accordingly, the Court should hold that the limitation, "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end," is not indefinite.

### H.  "bulkhead connector element" (asserted claim 9 and 10)

| DynaEnergetics' Construction | Horizontal's Construction |
|---|---|
| No construction needed; plain and ordinary meaning. | Subject to 35 U.S.C. § 112(f) <br> Function: establish an electrical connection with the second pin connector end of the pressure bulkhead <br> Structure: the exposed surface (118) of the detonator head shown in FIGS. 27, 28, and 30, and equivalents thereof |

The term "bulkhead connector element" is not a means plus function claim limitation. Horizontal casually dismisses the **presumption** that Section 112(f) does **not** apply because it does not use the word "means." First, it is not enough to show that a claim specifies a particular function. *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999) ("[E]ven if [a] claim element specifies a function, if it also recites sufficient structure or material for performing that

function, § 112[(f)] does not apply.") The presumption can only be overcome "*if the challenger demonstrates* that the claim term *fails to recite sufficiently definite structure*," and does so by clear and convincing evidence. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (emphasis added); *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1365-66 (Fed. Cir. 2003). Horizontal incorrectly assumes that "the generic terms 'element' and 'connector'—combined with the fact that the claims solely refer to the bulkhead connector element's function as opposed to its structure—means the presumption is overcome." Dkt. 37 at 6. This falls far short of the requisite burden.

Horizontal cannot demonstrate a lack of sufficiently definite structure for at least two reasons. First, Horizontal acknowledges that the "bulkhead connector element" is a consistently and repeatedly labelled structure in the specification. *Id.* at 6-7. Second, the claim language and specification describes the bulkhead connector element as structural in terms of describing its position within the system. The claim language describes the structure of the "bulkhead connector element *positioned* within the second outer gun carrier," '697 Patent at 12:31-33 (emphasis added), and the specification describes in one embodiment how the "dual spring pin connector assembly . . . is positioned within the tandem seal adapter 48 *extending* from a conductor slug 130 *to the bulkhead connector element*."'697 Patent at 8:34-40 (emphasis added).

Accordingly, the term "bulkhead connector element" does not require any construction. Its plain and ordinary meaning would be clear to a jury, and the claim itself is explicit in describing the structure and the functions the bulkhead connector element performs.

## III.   CONCLUSION

For the reasons set forth herein, DynaEnergetics respectfully requests that the Court reject Horizontal's proposed constructions and adopt DynaEnergetics' proposed constructions.

Dated: December 6, 2021

Respectfully submitted,

By: __/s/ Eric H. Findlay_____
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Mark D. Siegmund
Texas Bar No. 24117055
STECKLER WAYNE COCHRAN CHERRY, PLLC
8416 Old Mcgregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689
Email: mark@swclaw.com

Barry J. Herman (*pro hac vice*)
Maryland Federal Bar No. 26061
Stephanie M. Nguyen (*pro hac vice* to be filed)
DC Bar No. 1046300
Julie C. Giardina (*pro hac vice* to be filed)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice*)
Georgia Bar No. 874494
John G. Perry (*pro hac vice*)
Georgia Bar No. 141609

WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com
Telephone: (404) 879-2441
John.Perry@wbd-us.com

Lisa J. Moyles (*pro hac vice* to be filed)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice* to be filed)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

***Attorneys for Plaintiffs DynaEnergetics Europe
GmbH and DynaEnergetics US, Inc.***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

_/s/ Eric H. Findlay_____
Eric H. Findlay